### MARGARET MADDEN v. PENNSYLVANIA RAILWAY Co.

1. **PROPERTY OWNER MAY ENJOIN CLOSING PRESCRIPTIVE WAY.**

    A property owner has a property right in a public way, whether the fee to such way be in the municipality in trust for public uses or in an abutting owner. Such property owner is, therefore, unless compensated, entitled to an injunction against the closing or the obstruction of a public way, obtained by prescription, across railroad tracks.

2. **NOT NECESSARY THAT PROPERTY SHOULD ACTUALLY ABUT.**

    It is not essential, in order to entitle such property owner to an injunction, that his property should actually abut upon such way. It is sufficient if it is near enough to be materially affected by closing or obstructing such way.

3. **TO DEFEAT, INTERRUPTION MUST BE FOR STATUTORY TIME.**

    Where it appears that a way has been traveled continuously and by the public generally, whenever they saw fit, for more than twenty-one years, a prescriptive right is obtained which cannot be defeated by an interruption for less than the statutory period.

Stark Circuit Court.

4. INTERRUPTION INCIDENT TO MOVING TRAINS NOT SUFFICIENT.

   The interruption to the use of a footway across seven or eight railroad tracks, incident to the moving of many trains, is not such an interruption as will defeat a prescriptive right.

5. RIGHT EXTENDS CLEAR ACROSS STREET.

   The right of an abutting property owner is not simply to the center line of a street, but extends across the street.

APPEAL.

*Lynch & Day*, for plaintiffs.

*Carey & Mullins*, for defendants.

ADAMS, J.

The two cases of Margaret Madden against the Pennsylvania Company, No. 449, and Margaret Welsh against the Pennsylvania Company, No. 448, are in this court on appeal. The cases involve substantially the same questions, both of law and fact, and have been submitted to the court together.

Margaret Madden owns property as described in her petition, situated on Webb street in the city of Alliance. Margaret Welsh and the other plaintiffs own property described in her petition, situated on Main street in the city of Alliance; and while the title of the plaintiffs in each of these cases was denied by the railway company, in the answers, yet on the trial it is admitted that the plaintiffs were the owners of their respective properties, as alleged in their petitions. And in the Welsh case, the defendant admits the relative location of the railways and the property of the plaintiff. I may say here that the Welsh property is situated on Main street, near the eastern end of Main street, close to the line of the Cleveland & Pittsburg railroad; and that the Madden property is situated at the southern end of Webb street, and a little northeast of the Pittsburgh, Fort Wayne & Chicago railroad, or a little northeast of the eastern end of Main street; and the object and the prayer of both petitions is to restrain the Pennsylvania Company from closing up, by fence or otherwise, a right of way claimed by the plaintiffs in each of these cases, across the tracks of the Cleveland & Pittsburg railroad, and the tracks of the Fort Wayne Company, both of these railroads being controlled and operated by the Pennsylvania Company.

There is no claim made in the petition that this is a public highway, or a part of the street by statutory dedication, or by any dedication in fact, except what arises out of the claim made by plaintiffs, that by long use this space between the end of Main street and the end of Webb street has become a public way for foot passengers. The claim being that for a great many years, more than the period of twenty-one years, that the public generally, and these plaintiffs and their predecessors in title have traveled across this space at will; that the travel has been large, and in that way they have by prescription secured a title and right of way across the tracks of the defendant railway company.

The railway company denies the allegations of the petition as to this way; and that is the main question of fact to be determined in this case. Counsel for the railway company claim that the plaintiff is not entitled to the relief prayed for, even if she has established the fact of a way by prescription, because, as they say, neither of the properties of these plaintiffs touches or abuts on the way claimed. That the plat and the evidence shows that the Welsh property is a little west of the end

of Main street where this way begins; and that what is called Front street extends between the northern end of this way and the Madden property. And they make the further claim, that even though it be admitted that the plaintiffs have this right of way across these tracks, as they claim it, that they are not entitled to the relief of an injunction, because they have an adequate remedy at law; and the further claim is made that, by reason of an overhead bridge in the neighborhood, these parties have a reasonable means of access to their properties, and a reasonable way for going from their property to the principal parts of the city. And it is said that if this be a public way, then that the plaintiffs can have no private right in a public way; that the action, if maintainable at all, must be maintained by the public authorities, and not by the individual.

In McQuigg v. Cullins, 56 Ohio St., 649, it was decided that where the township trustees had ordered a township road vacated, and it appeared that the road so vacated was the only outlet that the owner of a farm at one end of the road had to the county road, that he had an easement in the township road. He and his predecessors in title had used the road for a great many years; and that the vacation of the road did not deprive him of his right to use the township road as a way. The syllabus says:

"The order of vacation of a township road by the township trustees, in a proceeding conducted under chapter 3, title 7, of the Revised Statutes, has the effect to relieve the public from any duty to keep such road in repair. But such order does not authorize the closing up or obstructing of the road against the objection of one who has acquired an easement in it.

" Where, in such case, the trustees and others threaten to obstruct or close up such road, injunction will lie. And if it appear that such threatened action will destroy the easement of an owner of adjacent land in such road, and no other road reasonably suitable to meet the necessities of such owner has been provided, injunction forbidding such obstruction or closing up of such road will be granted."

That, as it seems to the court, would answer the claim made, that the private individual can have no easement in what has heretofore been a public road.

The question of fact to be determined by the court is a difficult one, because the way claimed is across seven or eight railway tracks, across the tracks of two different railroads, and there are numerous switches and side tracks.

From the very nature of the business carried on by these two railway companies, the use of this ground by foot passengers was necessarily interrupted. That is, the foot passengers of necessity had to give way to the passing of trains and the shifting of cars in the yard there, and the proof showed that there were a great many cars and trains there daily.

The claim is made that the use of this way was interrupted by the construction in the way of the telegraph office; but it appears that that telegraph office was kept there some ten years, from 1879 or 1880 to 1890; and this evidence, as we think, shows that the passing of people across this ground began before the railroads were laid out at all, in 1852, and has continued up until the building of the fence complained of in this case.

It is true that at one time part of the travel from the south end of Webb street was over to the station, and that there was travel from the end of Main street to the station; but still the evidence establishes, as we think beyond controversy, that everybody, the public generally as well as the plaintiffs, and those who occupied their property, traveled from Webb street to Main street whenever they saw fit. And that had been going on continuously for more than twenty-one years before the telegraph office was located in 1879 or 1880, and if the prescriptive right had been gained at that time, its interruption for less than the statutory period would not destroy the right.

A good deal of evidence was introduced on the subject of cutting of trains there so as to enable people to pass; and also there was evidence that warnings had been posted there against trespassing; and the proof shows that at one time a fence had been built acoss the southern end of Webb street, and had been torn down by parties unknown and the travel resumed.

The testimony of the different witnesses as to the cutting of trains there, we think, is unimportant, owing to the character of it, that trains were cut frequently, and at other times they were allowed to stand there a greater period of time than that provided for by the statute. But, taking all this evidence, we have come to the conclusion that it does establish the fact that there had been a public use of this way for a great many years more than the time required to gain title by prescription, before it was interrupted by this telegraph office, and that it has continued ever since until the present time; and that there has been a public way for foot passengers established from Main street to Webb street by prescription; and that the claim made by the plaintiff is, in fact, correct; and that the public way is of such a nature that it can be best described as an extension from Main street to Webb street for foot passengers. Pavey v. Vance, 56 Ohio St., 162.

Then the question made by counsel for defendants, is, have the plaintiffs such rights in that way or street extended that they can have the remedy by injunction?

We think that Railway Co. v. Lawrence, 38 Ohio St., 41, has established the law in this state, and it reaffirms the doctrine announced in Cincinnati St. Ry. Co. v. Cumminsville, 14 Ohio St., 523, and other decisions, that the abutting property owners have a property right in the street, no difference whether the fee to that street be in the municipality in trust for public uses, or whether the fee be in the abutting property owner; and that case decides that injunction is a proper remedy. It is a property right, as much as the lot itself; and under the constitution of the state a property right cannot be taken for public purposes unless compensation be first made; so that a court of equity will protect the property owner in his property right by injunction; and if a public or quasi-public corporation wishes to take the property, it must first make compensation in money, either by private agreement or by condemnation.

But it is said that these properties do not abut upon this particular part of the street; do not abut on this way, and the claim is made broadly that the property owner has only these property rights in that part of the street that would be included between or within his lot lines extened across the street.

To say that a man who buys a lot, where the owner of the property has platted and laid out streets and alleys, on the faith of the ability to

get to and from his lot by the streets as laid out upon the plat, can be deprived of all of that right, and simply be allowed to go from his lot to that part of the street immediately in front of him, is to say that his right in the street is a nullity. The right of ingress and egress to and from the bed of the street that is immediately in front of this property would add little to the value of the property if he is cut off from other parts of the street. It is of course true that if the lot were on a street in a large city, where the street was many miles in length, the closing of the street at a great distance from the property might not affect the property to any extent; and there would be no remedy, because there would be no injury.

But where the closing of the street, either by vacation or by obstruction by steam railroads, or in any other way, is near enough to the property to materially affect its value, then the property owner has a right to be compensated before the street is so obstructed or closed, and he can prevent such closing or obstruction by injunction.

An examination of Cincinnati Street Railway Co. v. Cumminsville, 14 Ohio St., 523, and especially pages 546 and 547, will show that the Supreme Court of Ohio has taken advanced ground upon the rights of abutting property owners in a street ; and they say that while a great many other courts in the country have seen fit to differ from the Supreme Court of Ohio, still that is the law for the state. And that is also indicated by Sec. 2654, Rev. Stat., relating to the vacation of streets, wherein it is provided that the right of way and easement therein of any lot owner shall not be impaired by the vacation of the street.

These Ohio cases are also collected and commented on in Cohen v. Cleveland, 43 Ohio St., 190, 193 ; and in Baltimore & O. R. R. v. Lersch, 58 Ohio St., 639, it clearly appears that the right of the abutter is not simply to the centre line of the street, but goes clear across the street. In 10 L. R. A., 276, in the foot note, there is a collection of cases along the same line.

Counsel have been diligent in citing anthorities, and we have examined these authorites at great length, but we think the law of this case is settled by the decisions in Ohio, which differ from those of many of the other states.

Now, in the Madden case there was also a claim for a part of Front street running south of the Madden property ; and we think that the proof shows that that has been used by the public generally, and by those who occupied this property for more than twenty-one years.

Finding the facts and the law as indicated, the injunction sought is made perpetual, and the same decree entered as in the court of common pleas.